**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **MÜNCHENER RÜCKVERSICHERUNGS-GESELLSCHAFT AKTIENGESELLSCHAFT IN MÜNCHEN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  10-551 (JEB)** |
| **NORTHROP GRUMMAN RISK MANAGEMENT INC.,** *et al.,* | |
| **Defendants.** | |

**MEMORANDUM OPINION**

Donald C. Holmes, counsel for reinsurance company Munich Re, is on a mission to hold

Northrop Grumman Corporation and Huntington Ingalls (formerly Northrop Grumman

Shipbuilding) accountable for purportedly defrauding the Navy.   He hopes to make hundreds of

millions of dollars for doing so by bringing a False Claims Act suit in Mississippi.   While

attempting to establish the alleged fraud, however, Holmes improperly used sensitive documents

provided by the Navy under a protective order issued five years ago by this Court in a separate

proceeding that has long since been terminated.

Earlier this year, the district court presiding over the FCA action in the Southern District

of Mississippi dismissed Holmes's case, in part because he had violated this Court's protective

order.  See United States *ex rel.* Holmes v. Northrop Grumman Corp., No. 13-85, 2015 WL

3504525 (S.D. Miss. June 3, 2015).  With that decision pending on appeal, Holmes now moves

this Court to reopen the case here to "correct" his "inadvertent noncompliance" with the

1

protective order.  In particular, he asks for a modification of the order to allow him to use the protected documents in his FCA suit.  As his Motion is both unconvincing and misleading, the Court finds no reason to alter the order's terms.

## I.     Background

This litigation involves the intersection of two different cases in other forums: a foreign arbitration of a reinsurance dispute in London and a False Claims Act suit in Mississippi.  The instant Motion seeks to modify a protective order issued by this Court in relation to the former in order to assist Holmes in the latter.  In setting forth the facts, the Court draws from both the decision in the FCA suit and other pleadings in this case.

Northrop Grumman Risk Management, Inc. (NGRMI) is the "captive" insurer of Northrop Grumman Corporation (Northrop), a large U.S. defense contractor.  See Am. Compl., ¶ 4.  NGRMI insured its parent company for certain losses over $1 million.  See id.  Münchener Rückversicherungs-Gesellschaft Aktiengesellschaft in Munchen Koniginstr (Munich Re) is a German company that reinsured Northrop's covered losses.  See id., ¶¶ 2, 4.  In 2008, Munich Re initiated arbitration proceedings against NGRMI in London to dispute a claim for losses caused by Hurricane Katrina and to seek reimbursement under the companies' reinsurance contract.  See id., ¶ 11.

While the arbitration was pending, Munich Re filed a request with the U.S. Navy for documents the Navy had received from Northrop Grumman Shipbuilding, Inc., a former subsidiary of Northrop that has since been spun off as an independent company named Huntington Ingalls, Inc.  See id., ¶ 19; Opp. at 3 n.2.  According to Munich Re, the Navy agreed to release the requested documents provided that an enforceable protective order was put in place

to ensure that they would be used only for the arbitration proceedings.  See Compl., ¶ 3 & Exh. 1 (Proposed Protective Order), ¶ 7.

Munich Re then filed a Complaint in this Court on April 6, 2010, against NGRMI, Northrop, and Huntington Ingalls (collectively "Northrop Grumman"), asking, *inter alia*, for the Court to issue a protective order.  See Compl., ¶ 13.  (Curiously, although Munich Re admits this was a miscellaneous action, the company filed the Complaint as a civil case.  See id., ¶ 1.) Counsel for Munich Re, Donald C. Holmes and Gerald Fisher, explicitly stated in the Complaint here that they sought these documents "in aid of private foreign arbitration only" and that they were "in no way . . . attempt[ing] to usurp the power of the . . . arbitration tribunal" for another purpose.  See Am. Compl., ¶ 22 (emphasis added).  Although discovery had not yet begun in the arbitration proceedings, see Def.'s First Mot. for Extension of Time to Respond, ¶¶ 2, 10, Munich Re was apparently eager to obtain the requested documents.  In the following weeks, the company filed multiple motions to expedite and oppositions to Defendants' motions for extension of time.  See, e.g., Pl.'s First Mot. to Expedite (Apr. 26, 2010) at 6 ("The entry of the protective order should take place in an expedited fashion so Plaintiff can proceed with gathering and marshaling proof from U.S. Navy documents . . . ."); Pl.'s Opp. to First Mot. for Extension (May 7, 2010) at 5 ("There is no reason for further delay."); Pl.'s Second Mot. to Expedite (May 12, 2010) at 3 ("Plaintiff urgently needs . . . the entry of the protective order . . . ."); Pl.'s Opp. to Second Mot. for Extension (May 17, 2010) at 4 ("Plaintiff needs the documents it seeks at the earliest possible date.").

On June 2, 2010, while the litigation in this Court was still pending, Holmes and Fisher filed a *qui tam* lawsuit against Northrop and Huntington Ingalls under the False Claims Act, which was later transferred to the Southern District of Mississippi, seeking over $2.5 billion in

damages.  See Holmes, 2015 WL 3504525, at *2, 6.  Pursuant to the provisions of the Act, the

lawsuit was filed under seal and not made known to this Court.  See 31 U.S.C. § 3730(b)(2);

Holmes, 2015 WL 3504525, at *1.  The *qui tam* complaint alleged that Northrop and Huntington

Ingalls had defrauded the Navy in the amount of no less than $835 million by using government

funds earmarked for Hurricane Katrina-related expenses to cover cost overruns incurred before

the hurricane.  See id. at *2.  Holmes and Fisher further averred that they expected the

documents they had requested from the Navy would prove these allegations.  See id. at *5 n.5.

A few weeks later, Munich Re and Northrop Grumman stipulated to a protective order

here, see Joint Mot. for Protective Order, and on June 24, 2010, the Court approved it.  See ECF

No. 20 (Order Granting Joint Mot. for Protective Order).  The protective order entered was

substantially similar to the one Munich Re had initially proposed.  Compare Protective Order

with Proposed Protective Order.  The final version included a "Good Cause Statement" section

in which each party explained why the order was necessary.  Northrop Grumman noted that

because the company is a major defense contractor for the United States, the material disclosed

by the Navy would include both its "sensitive business material" and information "vital to the

national defense."  See id. at 2 (explaining that, if disclosed without an enforceable protective

order, these documents would "jeopardize Northrop's competitive edge in the marketplace" and

pose a risk to national security).  Munich Re, in turn, stated that it needed the requested

documents for the arbitration and, recognizing the documents' sensitive nature, agreed they

should be protected.  See id. at 3.  Finally, Northrop Grumman and Munich Re further stipulated

that the Navy's Touhy Regulations, which govern the agency's responses to information

requests, prohibited the Navy from disclosing the requested information absent a protective

order.  See id. at 3-4.  The parties explained, first, that Naval officers, like all government

personnel, are "required under penalty of prosecution and imprisonment . . . to protect from disclosure trade secrets submitted to them," and second, that the requested documents also contained the Navy's own information, some of which pertained to ongoing business with contractors.  See id.

Upon receipt of the documents from the Navy, and despite the explicit terms of the protective order, Holmes nonetheless submitted them to the U.S. Department of Justice's Civil Fraud Division and the district court presiding over the *qui tam* action.  See Holmes, 2015 WL 3504525, at *9; Mot. at 1-2.  Holmes wrote in his Relators' Motion to Assist the DOJ, "Relators have provided the Government with an extensive Disclosure Memorandum pointing out that the evidence of this fraud is based on documents available directly from the Navy, many of which Relators obtained pursuant to Touhy Regulation Requests in connection with ongoing litigation on an insurance claim."  Holmes, 2015 WL 3504525, at *8.  The following year, Munich Re and NGRMI settled their arbitration dispute, and this Court granted their joint motion to dismiss the action here with prejudice.  See Minute Order Granting Parties' Joint Mot. to Dismiss (Nov. 29, 2011).

After investigating Holmes's FCA claim, the United States declined to intervene in his Mississippi suit.  See Holmes, 2015 WL 3504525, at *1.  Holmes's co-relator, Gerald Fisher, also passed on the opportunity to pursue the case, withdrawing from the *qui tam* action before Holmes filed the amended complaint.  See id. at *2.

On June 3, 2015, the United States District Court for the Southern District of Mississippi issued a searing opinion, dismissing the *qui tam* action without prejudice to the government and disqualifying Holmes as a relator on account of his numerous ethical violations.  See id.  The opinion described Holmes's blatant disregard for his professional responsibilities as a lawyer,

noting that he had violated his duty of candor by misrepresenting his motives for obtaining the

Navy documents, violated his duty of loyalty to Munich Re by simultaneously arguing a position

that directly contradicted the one he took on behalf of the company, and violated his duty to keep

information regarding his representation of Munich Re confidential.  See id. at *4-8.  The district

court also found that Holmes was "well aware of the terms" of this Court's protective order and

"knowingly violated the obligations imposed" by them.  See id. at *9.  Contending that these

conclusions are "full of speculation," Holmes has appealed the district court's decision to the

U.S. Court of Appeals for the Fifth Circuit.  See Reply at 3.

Meanwhile, Holmes has filed the present Motion, requesting that this Court sanction him

in the amount of $1,000 "contributed out of his own pocket to the local legal aid society" and

then modify the protective order to permit disclosure to DOJ and the *qui tam* court.  See Mot. at

1-2.  Though seeking extraordinary relief, the Motion is less than two pages in length and

contains no citation to authority.  And, instead of ever articulating the underlying facts in his

Motion, Holmes refers the Court to an early version of the brief he later filed with the Fifth

Circuit as background.  See id. at 2; Mot., Exh. 2 (Fifth Circuit Brief).

In that document, Holmes states that his violation of the protective order is "the principal

issue" in his Fifth Circuit appeal, and he repeatedly tells the Fifth Circuit that he has filed a

motion in this Court to "correct this mistake" and "clear this issue from the record."  Fifth Circuit

Brief at 9-10, 23; see also Brief of Appellant, Donald C. Holmes, United States ex rel. Holmes v.

Northrop Grumman Corp., 15-60414 (5th Cir.) (filed Oct. 1, 2015) at 11-12, 23 (showing same

statement in filed version of Fifth Circuit brief).  Apparently playing fast and loose with the

Court, Holmes explains the genesis of the order by attesting that "Northrop Grumman insisted

upon a protective order" and Munich Re merely agreed to it.  See Fifth Circuit Brief at 9.  Again

mischaracterizing the facts, Holmes says that, once the order was in place, he received

"[s]upposedly confidential information" from the Navy that just so happened to support his *qui*

*tam* action.  See id. at 10.  Holmes then contends that he did not seek out this information to use

in his *qui tam* action because that case had been filed "several months earlier" and therefore "was

not an issue at that time" – an assertion that is clearly belied by the record.  See id. at 21.

Northrop Grumman has opposed the instant Motion.

## II.    Analysis

Holmes openly admits that he has violated this Court's protective order by sharing

documents produced under it to parties outside this case and by using the documents in other

litigation.  See Mot. at 1-2; Fifth Circuit Brief at 10.  With aspirations to collect his bounty under

the FCA, he nonetheless now asks the Court to modify the original protective order and sanction

him $1,000 to be donated to a local legal aid society.  See Mot. at 2; Reply at 4.  Although

Holmes hopes this Court will absolve him of his previous unauthorized disclosure and use of the

protected documents, it is the Southern District of Mississippi — not this Court — that has

levied the sanctions.  This Court has no power to alter them.  Nor will it consider his voluntary

proposal of a $1,000 penalty — a likely attempt to show the Fifth Circuit that he has already

been sanctioned by this Tribunal in the hopes of having the dismissal there overturned.  All this

Court will do is assess the merits of modifying the protective order to allow Holmes to use the

protected documents going forward.

Federal Rule of Civil Procedure 26(c) permits courts to issue protective orders upon a

showing of "good cause."  Protective orders both facilitate efficient pre-trial discovery and

prevent parties from abusing Rule 26's liberal discovery provisions.  See Seattle Times Co. v.

Rhinehart, 467 U.S. 20, 34 (1984) (noting that "it is necessary for the trial court to have the

authority to issue protective orders" because "pretrial discovery . . . has a significant potential for abuse").

The discretion to modify a protective order lies with the district court that issued it.  See E.E.O.C. v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046-47 (D.C. Cir. 1998).  The court retains this power even after the underlying case has been settled for as long as the order is in effect.  See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 782 (1st Cir. 1988) (citing United States v. Swift & Co., 286 U.S. 106, 114-15 (1932)).

The Court begins its analysis by noting that the wrong party has filed here.  Plaintiff's counsel expressly filed this Motion on behalf of himself, Donald Holmes, and not on behalf of Munich Re.  See Mot. at 1.  The Motion is titled "Counsel's Motion to Correct Inadvertent Non-Compliance with Protective Order in This Case," and the first sentence reads, "Plaintiff's counsel in this case, Donald C. Holmes, moves the Court to allow him to correct his inadvertent disclosure of materials to the U.S. Justice Department and a separate Federal District Court in DC."  Id. (emphasis added).  Neither Holmes's Memorandum in Support of the Motion nor his Reply to Defendant's Opposition even mentions Munich Re.

Not only does this raise a question of identity of party, but it also presents a potential conflict of interest.  Holmes wants to resolve his noncompliance with the protective order because it has complicated his qui tam action against Northrop and Huntington Ingalls.  See Mot. at 2.  Munich Re, on the other hand, may not want to assist Holmes in pursuing the qui tam claim.  See Holmes, 2015 WL 3504525, at *6-7 (finding that Holmes breached his duty of loyalty to Munich Re by filing the qui tam action without Munich Re's informed consent).  Munich Re, therefore, has not offered any interest in modifying the protective order.

Because the parties to this case are Munich Re and Northrop Grumman, Holmes is a third party.  Third parties seeking to modify a protective order should first move to permissively intervene in the case under Federal Rule of Civil Procedure 24(b).  See Nat'l Children's Ctr., 146 F.3d at 1045-46.  Of course, "permissive intervention is an inherently discretionary enterprise." Id. at 1046.  Holmes's failure to follow the proper procedure constitutes sufficient grounds for denying the Motion.

Yet, even if he had correctly sought modification after intervening as a third party, the outcome would be the same.  The standard for modifying a protective order in favor of a third party mirrors that used when considering a party to the litigation's motion to modify – "'good cause' under Rule 26(c)."  See Tavoulareas v. Washington Post Co., 737 F.2d 1170, 1173 (D.C. Cir. 1984).

Although Tavoulareas did not further define "good cause," D.C. Circuit opinions reviewing the grant of a protective order provide that "the 'good cause' standard in [Rule 26(c)] is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case."  United States v. Microsoft Corp., 165 F.3d 952, 960 (D.C. Cir. 1999).  To establish good cause, parties must point to specific facts to support their claimed interests.  See Alexander v. F.B.I., 186 F.R.D. 71, 75 (D.D.C. 1998).  With these principles in mind, the Court proceeds to first identify and then to balance the relevant interests.

Holmes, in asking for a modification of the protective order, directs the Court to his Fifth Circuit brief and states that "this issue" – presumably his failure to comply with the order – "has wound out of control over the years."  Mot. at 2.  He explains that he now would like the Court's help in correcting his mistake.  See id.  Implicit in Holmes's request is an interest in knocking out the hurdles he faces on appeal.  If, on his own initiative, Holmes resolves his failure to obey

the Court's order – in other words, persuades this Court to allow his disclosure of the documents and sanctions him here – the Fifth Circuit may look more favorably on his attempt to proceed with the *qui tam* action and may treat the sanctions imposed by the Southern District of Mississippi as duplicative.

Holmes also emphasizes that he "only" shared the documents with DOJ and the district court. <u>See</u> Reply at 2. He seems to contend that allowing those entities access did not contravene any interest in maintaining confidentiality either because FCA actions are by nature confidential or because the government's interest in identifying and penalizing fraud trumps its own confidentiality concerns.

Northrop Grumman responds that the Court should not modify the order because doing so would effectively excuse Holmes's misconduct and potentially aid in his Fifth Circuit appeal. <u>See</u> Opp. at 2, 5-8. As defendants in Holmes's FCA lawsuit, Northrop and Huntington Ingalls have a stated interest in preventing him from succeeding in the Fifth Circuit litigation, both to limit litigation expense and avoid potential liability. <u>See id.</u> In addition, the Court considers Northrop Grumman's and the Navy's interests set forth in the order's "Good Cause Statements" section. These include the need to protect from disclosure both Northrop Grumman's trade secrets and the Navy's own information regarding its dealings with contractors. <u>See</u> Joint Mot. for Protective Order, Exh. A (Stipulated Protective Order) at 3-4. Holmes offers no explanation as to why these reasons for protecting the documents are any different today from what they were when the parties negotiated the order's terms.

Based on these identified interests, good cause weighs heavily in favor of maintaining the current terms of the protective order. Holmes's interest in mitigating the consequences of his misconduct and proceeding as a relator in the *qui tam* action pales in comparison to the Navy's

interest in protecting the trade secrets of its contractors and the details of how it conducts business.  Even if the defense contractors did defraud the Navy, the Navy's interest in protecting the integrity of its contract operations still prevails.  Of course, if it believes such fraud has occurred, the Navy remains free to pursue further action on its own against Northrop Grumman.

The Court's interest in preserving the integrity of the judicial process further tips the scales away from modification.  First, although Holmes would have the Court believe that his *qui tam* action "was not an issue" when he sought the protective order, <u>see</u> Fifth Circuit Brief at 21, the record clearly shows that Holmes <u>knew</u> he would use the documents from the Navy in that case.  He filed the *qui tam* action only a month after he asked this Court to help him obtain Northrop and Huntington Ingalls's documents from the Navy.  <u>Compare</u> Am. Compl. (filed May 3, 2010), <u>with</u> <u>Holmes</u>, 2015 WL 3504525, at *1 (FCA complaint filed June 2, 2010).  More importantly, two weeks <u>before</u> Holmes signed the ultimate protective order, when the parties were still negotiating its terms, he told the district court presiding over the *qui tam* action that he expected the documents he had requested in this Court would support his claims.  <u>See</u> <u>Holmes</u>, 2015 WL 3504525, at *5 n.5 (noting that Holmes stated in FCA complaint that "[u]pon review of documents submitted by Northrop Grumman [and Huntington Ingalls] to the [Navy], . . . those records <u>will show</u> that Northrop Grumman [and Huntington Ingalls] also improperly used Katrina Money for pre-Katrina overruns") (emphasis added).  In fact, the Southern District of Mississippi found that Holmes had a "clear intent" to use the protected documents in the *qui tam* case.  <u>See</u> <u>id.</u> at *5.

While ostensibly negotiating on behalf of his client for the release of documents by means of a protected order, Holmes appears to have been seeking his own access to the documents, indicating that he acted in bad faith in order to obtain them.  Whatever legitimate

interest Holmes might have in the documents today, he should have raised his interest in using the documents outside the arbitration when he negotiated the order's terms. Northrop clearly agreed to the release of the documents only under the condition of the Protective Order, and Holmes cannot come to this Court five years later, absent a change in circumstances, and reasonably expect the Court to change the terms he requested.

Second, the Navy relied on Holmes's word and signature. As Holmes himself explained, the Navy would not have released the documents without an enforceable protective order in place. See Compl., ¶ 3. And the Navy did not want just any protective order – indeed, the Navy, Northrop Grumman, and Munich Re spent over two months negotiating its terms. Compare Compl. (filed April 6, 2010), with Joint Mot. for Protective Order (filed June 18, 2010). To now change those terms to permit Holmes to share and use the Navy's documents against its stated interests would negate the purpose of the order. See S.E.C. v. Merrill Scott & Assocs., Ltd., 600 F.3d 1262, 1271-72 (10th Cir. 2010) (warning that allowing parties to breach promises made in protective orders would "encourage similar improper conduct" and prevent future parties from being able to rely on such orders when giving essential information).

That Holmes asks to use the protected documents in a sealed proceeding that might assist the Navy in recovering misused funds does not help his cause. First, the protective order that Holmes drafted, negotiated, and signed plainly prohibits using the documents "for any . . . purpose" other than the London arbitration. See Stipulated Protective Order, ¶ 4. This includes FCA lawsuits. And second, should the government have an interest in taking legal action against Northrop and Huntington Ingalls, it is at liberty to do so. See Holmes, 2015 WL 3504525, at *10 ("[A]s the real party in interest, the government would not be prevented from bringing these or similar claims against Northrop Grumman [and Huntington Ingalls].").

Finally, the Court does not take lightly Holmes's repeated attempts to draw it into believing that his violation of the order was an "inadvertent" "mistake" caused by his failure to read it.  See Mot. at 1-2; Reply at 1, 4-5.  Given the facts on the record, this contention is disingenuous at best.

As Holmes's conduct here is precisely what Rule 26(c) is designed to prevent, see Seattle Times, 467 U.S. at 34, the Court finds no reason – let alone good cause – to change the terms of the original protective order.

**III.    Conclusion**

For the reasons set forth above, the Court will issue an Order denying Plaintiff's Counsel's Motion.

/s/ James E. Boasberg<br>
JAMES E. BOASBERG<br>
United States District Judge

Date:  December 9, 2015